

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEWMAN NALLS, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 06 C 3595<br>) |
| BOARD OF TRUSTEES OF ILLINOIS<br>COMMUNITY COLLEGE DISTRICT<br>NO. 508 d/b/a CITY COLLEGES<br>OF CHICAGO | ) Judge Joan H. Lefkow<br>)<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Newman Nalls ("Nalls"), filed a one-count complaint against defendant, Board of Trustees of Illinois Community College District No. 508, d/b/a City Colleges of Chicago ("defendant"), pursuant to 42 U.S.C. § 1983 alleging a deprivation of his property without due process. Presently before the court is defendant's motion for summary judgment, along with Nalls's motion to strike and motion to continue his date to respond to defendant's motion for summary judgment and the date of the close of discovery. For the reasons stated below, all of the motions are denied.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). To determine whether any genuine issue of fact exists, the court must pierce the pleadings

and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(C) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## THE FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Nalls was employed by the defendant as an adult educator.[1] As a municipal employee,

---

[1] Nalls failed to comply with this district's Local Rule 56.1. Local Rule 56.1(a) provides that a motion for summary judgment must include, *inter alia,* a "statement of material facts as to which the moving party contends there is no genuine issue that entitle the moving party to a judgment as a matter of law." This statement of material facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Part (b) of Local Rule 56.1 requires a party opposing summary judgment to file, *inter alia,* a concise response to the movant's statement of material facts. In this case, the court has been forced to examine the entire record to determine whether the material facts identified by defendant are in genuine dispute, because Nalls's incomprehensible response to defendant's statement of material facts denies facts taken directly from his complaint and contains no citations to the record. Compare, *e.g.*, Nalls's Response to Defendant's Statement of Material Facts, at ¶ 1 (denying that he is a resident of Cook County, Illinois) with Nalls's Compl., at ¶ 1 (asserting that he is a citizen and resident of Cook County, Illinois). In light of Nalls's failure to cite to the record in support of
(continued...)

2

Nalls belonged to the American Federation of State, County, and Municipal Employees Union, Local 3506 ("Local 3506"), which had a collective bargaining agreement with defendant.

On Saturday, February 12, 2005, Nalls was observed carrying a computer monitor, partially covered by a red blanket, down a stairwell of Kennedy-King College ("the College"). Upon inspection of Nalls's office by the College security personnel and staff that observed Nalls, a computer monitor and red blanket were discovered. The identifying numbers of the computer

---

[1](...continued)
his denials, the court disregards Nalls's response and deems all of the facts identified by defendant that are supported by the record as admitted. *See Michas* v. *Health Cost Controls of Ill.*, 209 F.3d 687, 689 (7th Cir. 2000).

To be fair, on the same date Nalls filed his response to defendant's motion for summary judgment and statement of material facts, he also filed a motion to continue his date to respond. Perhaps, then, Nalls did not actually intend the responses he filed on December 22, 2006 to stand. If so, though, it is not clear why he filed them in the first place, as they are so inadequate that they scarcely differ from a non-response and only muddle the requests made in his motion to continue the date to respond and the date of the close of discovery.

As for those motions, the only justification Nalls's attorney provides for failing to timely complete discovery is that he was changing the location of his law office. While the court appreciates that relocating a law practice can cause some upheaval, there is no indication that Nalls has taken the first step towards completing discovery: no depositions have been taken and defendant's written discovery remains unanswered. In fact, according to defendant, it cannot communicate with Nalls regarding the outstanding discovery because Nalls's attorney does not even have a working telephone to consult about discovery. This is a simple case, involving only a handful of facts and even fewer witnesses, and thus, Nalls has no excuse for failing to complete discovery even when the disruption in his attorney's law practice is taken into account. Even more inexcusable is Nalls's failure to make a good faith effort to comply with this court's deadlines, particularly after the court granted Nalls an earlier extension of the close of discovery date. Accordingly, Nalls's request to continue the date of the close of discovery is denied.

In light of that ruling, the court sees no reason to continue Nalls's date to respond to defendant's motion for summary judgment. Without an opportunity to further develop the factual record, extending the time to respond would likely be of little benefit to Nalls. Furthermore, Nalls has already submitted a response to the motion, although like his response to defendant's statement of material facts, it is unhelpful, which only reinforces the court's belief that granting Nalls additional time to respond would not materially improve his position. In any event, the court is satisfied that it has ascertained Nalls's position, and thus, no further response is needed. Accordingly, Nalls's motion to continue the date to respond is denied. The court considers the merits of defendant's motion based on the papers presently before the court.

monitor discovered in Nalls's office matched those on a computer monitor missing from a restricted access, secured area of the College.

Nalls alleges (and defendant does not specifically deny) that on Monday, February 14, 2005, the president of the College, Clyde El-Amin, instructed College security to remove Nalls from the College and initiated Nalls's arrest by the Chicago Police Department in connection with the computer monitor discovered in his office.

On February 17, 2005, defendant sent Nalls a letter labeled "Notice of Pre-disciplinary Meeting" ("the Notice"). The Notice advised Nalls that an "emergency pre-disciplinary meeting" had been set for February 21, 2005, outlined the charges against him, and informed him that he was suspended without pay pending resolution of the charges. The hearing date was later changed to February 22, 2005.

On February 22, 2005, the hearing was held. Later that day, John Dozier, interim Vice-President of the College, sent President El-Amin a memorandum recommending Nalls's termination. In the memorandum, Dozier reported that Nalls was accompanied at the hearing by two Local 3506 representatives, Audrey Johnson and Robert Granderson, and that Nalls and two witnesses to the alleged events had provided statements.[2]

Sometime thereafter, Nalls's employment was formally terminated.

---

[2]Nalls moves to strike the affidavit of Dozier, alleging that the facts asserted therein are based on hearsay. Nalls's objection is unfounded. Dozier's affidavit is based on his personal knowledge and makes no assertion regarding the content of statements made by third parties. Nalls also argues that Dozier's affidavit is infirm because there is no evidence that he was a competent hearing officer and the hearing was not recorded by a licensed court reporter. Nalls, however, fails to support his argument with a citation to authority or to explain why either asserted fact, even if true, provides a basis to strike Dozier's affidavit. As a consequence, Nalls's motion to strike is denied.

## DISCUSSION

Nalls contends that defendant deprived him of his right to procedural due process guaranteed by the Due Process Clause of the Fourteenth Amendment to the Constitution by discharging him without first providing him with notice and an opportunity to be heard. Nalls argues that he was deprived of his protected interest in continued employment no later than Monday, February 14, 2005, after defendant changed the locks on his office door, stationed security personnel outside his office, directed College security to escort him off the College's premises and initiated his arrest by the Chicago Police Department, because these measures actually or constructively terminated his employment. Defendant counters that the deprivation of Nalls's protected interest did not occur until after Nalls's disciplinary hearing on February 22, 2005, when Nalls's employment was officially terminated. Before then, defendant maintains Nalls was merely suspended without pay. The court need not decide when Nalls was actually terminated, because even if it is assumed that Nalls was simply suspended without pay prior to his disciplinary hearing, it is clear that his due process rights were violated.

When analyzing procedural due process claims under Section 1983, courts employ a two-step analysis: "The first step requires [courts] to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Strasburger* v. *Bd. of Educ., Hardin County Cmty. Unit School Dist.*, 143 F.3d 351, 358 (7th Cir. 1998). In this case, the parties agree that Nalls had a protected property interest in continued employment by virtue of the collective bargaining agreement in effect between Local 3506 and defendant and was, therefore, entitled under the Constitution to due process in connection with any attempt by defendant to terminate his employment. *See Cleveland Bd. Of Educ.* v.

5

*Loudermill*, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (Due Process Clause requires an opportunity for a public employee who has property interest in employment to have a hearing prior to discharge.). The parties do not recognize, however, that Nalls's due process rights extended to a right not to have his employment interrupted by a suspension (at least without pay), because Article IX of the collective bargaining agreement provides that suspensions, like dismissals, must be for just cause. *See Gilbert v. Homar*, 520 U.S. 924, 931-32, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (recognizing that public employees have a property interest in the uninterrupted receipt of their paycheck). *See also Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1441 (7th Cir. 1995) (recognizing that plaintiff's interest in remaining gainfully employed is an important one that must not be interrupted without substantial justification); *Solomon v. Philadelphia Housing Authority*, 143 Fed. Appx. 447, 453 (3rd Cir. 2005) (finding that plaintiff had a protected property interest in continued employment not interrupted by suspension or termination absent just cause in light of provision in collective bargaining agreement). As will be mentioned below, there are situations in which it makes a difference whether the interrupted receipt of a paycheck was the result of a suspension without pay or a termination. In this case, it does not because the facts demonstrate that plaintiff's suspension without pay was tantamount to a termination. He was locked out of his office, removed from the premises, and not allowed to work, albeit not formally terminated until after an informal hearing. As such, the court finds that Nalls was deprived of his property on February 14, 2005.

Defendant contends that it was entitled to terminate plaintiff's pay and remove him from all duties and privileges of employment under the holding of *Gilbert*, which carved out an

6

exception to the above doctrines where the public employer could demonstrate exigent circumstances justifying immediate suspension without pay. In *Gilbert*, a campus police officer was arrested by state police and charged with a drug felony. His employer suspended him without pay, effective immediately, pending its own investigation. (Four weeks later he was given an opportunity to tell his side of the story and ultimately was demoted rather than fired.) The Court held that under these circumstances, the State did not violate due process by failing to provide notice and a hearing before suspending a tenured public employee without pay. In so doing, the Court emphasized that *Loudermill* does not set down an absolute rule; rather, where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause. *Gilbert*, 520 U.S. at 930.

The issue here, then, is whether defendant is entitled to judgment as a matter of law that the facts (viewed favorably to the plaintiff) made it necessary to act quickly or impractical to provide predeprivation process and justified the post-termination process given. Courts look to three factors to determine what process is "due" under the circumstances: "'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.' " *Id.* at 931-32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)); *see Loudermill*, 470 U.S. at 542-43, citing *Eldridge* factors ("The need for some form of pretermination hearing . . . is evident from a balancing of the competing interests at stake. These are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous

7

termination."). Unless application of the *Eldridge* factors reveals good cause to depart from *Loudermill*, the court must adhere to the general rule that Nalls should not have been suspended without pay pending his hearing.

The private interest affected by the action was Nalls's interest in the continuation of his means of livelihood. Unlike the employee in *Gilbert*, who faced a *"temporary suspension without pay,"Gilbert* at 932,[3] Nalls faced termination, as did the plaintiff in *Loudermill*. *See Loudermill*, 470 U.S. at 543 ("While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.").

The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, implicates the underlying purpose of procedural due process, to "provide a meaningful hedge against erroneous action." *Id.* at 543.[4] In *Gilbert*, the risk of error was minimal because the university's decision to suspend was informed by and founded on an independent criminal investigation that had determined that charges were warranted. *See* 520 U.S. at 926-28. In *Loudermill*, by comparison, the employer discovered that a security guard had a felony conviction and was fired for having falsified his application for employment by not revealing it. The employer argued that having an

---

[3]This portion of the Court's opinion is perplexing in that it would seem that a suspension under the circumstances described inhered with the threat of termination. Nevertheless, the facts as set out do not suggest that the employee faced termination, and the Court made a point of it.

[4]"[S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Loudermill*, 470 U.S. at 543.

8

ex-felon as its security guard was "very distressful." But the Court cautioned against making the presumption that the employee had misrepresented himself and pointed out that the employee's job performance had been fully satisfactory." *Loudermill*, 470 U.S. at 545. Here, there was no independent prosecutorial determination as in *Gilbert* or comparable corroboration of the facts. Rather, the employer reached its decision after receiving the security officer's report and confirming that the computer was in Nalls's office. Because innocent explanations can be readily imagined (he had permission); defendant created a substantial risk of error as to the facts in proceeding without obtaining any explanation from plaintiff. As in *Loudermill*, the employee was suspected of dishonest conduct; yet, as in *Loudermill*, the employer points to no previous acts of dishonesty or unsatisfactory performance that would call for immediate suspension without pay.

Moreover, the governmental interest in the expeditious removal of unsatisfactory employees, particularly if Nalls was a thief, is certainly legitimate. But unlike the situation in *Gilbert*, where the government had a substantial interest in acting quickly so as to preserve public confidence in its police force by immediately suspending the publicly accused officer, here, the urgency of the situation is difficult to comprehend. Nalls's conduct was unknown to the public and did not implicate his duties as an adult educator. It does not logically follow that deferring the suspension without pay until a *Loudermill*-type hearing could be held would have undermined the College's mission of recruiting and educating students. The court is not persuaded that defendant was in a position where it had to act quickly or that pre-deprivation process was not practical.

9

In sum, after weighing the *Eldridge* factors, the court concludes that Nalls represents a "garden variety" *Loudermill* situation, not an exception to the rule under the guidance of *Gilbert*, because there is nothing in the record establishing that defendant had an urgent need to take immediate action, a special government interest, or "substantial assurance" that the deprivation was not baseless. *Guillemard-Ginorio v. Contreras Gomez*, 161 Fed. Appx. 24, 28-29 (1st Cir. 2005) (distinguishing *Gilbert* on those grounds). Therefore, Nalls was entitled not to be terminated, or suspended without pay, pending his hearing.

Plaintiff has not moved for summary judgment, although it appears that he is entitled to judgment as a matter of law inasmuch as the material facts are not in dispute. If that assumption can be made, the only remaining issue in this case is that of relief. If he is to recover damages, Nalls must have been actually injured by the deprivation of procedural due process. *See Carey*, 435 U.S. at 266 ("[S]ubstantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights."); *id.* at 266-67 ("[I]f, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.")

If the termination was justified, Nalls may be entitled to lost pay for the period beginning February 14 through the time he would have been fired or suspended without pay had proper procedure been followed. *See Patterson v. Portch*, 853 F.2d 1399, 1408 (7th Cir. 1988) (plaintiff who was denied procedural due process but would have been terminated had the proper procedures been followed was entitled to recover in compensatory damages the loss of pay between the day he was terminated and the day he would have been terminated had the proper

procedures been followed, plus the monetary equivalent of any mental and emotional distress actually caused by the denial of procedural due process itself, minus so much of the loss as might have been averted by reasonable efforts to mitigate damages).

If the termination was not justified, plaintiff's damages may include the consequences of the termination, such as lost pay. *See City of Chicago v. United States Dept. of Labor*, 737 F.2d 1466, 1473 (back pay is an appropriate "make whole" remedy where plaintiff showed that he would have been employed for some longer period of time had he received the pretermination procedures to which he was entitled); *Carey*, 435 U.S. at 262 ("[I]n a proper case," a plaintiff might recover damages for mental and emotional distress caused by the denial of procedural due process.).

All of this suggests that a trial on damages is on the horizon. Defendant has the burden of going forward with evidence that the termination was justified. *Carey*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (confirming Seventh Circuit's earlier ruling that plaintiffs were not entitled to recover damages representing the value of missed school time caused by an unconstitutional suspension if school board could prove on remand that there was just cause for the suspensions and that plaintiffs would have been suspended even if a proper hearing had been held). The recommendation of the hearing officer (Exhibit 6 to the motion) would be prima facie evidence of justification. *See, e.g., Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 648 (7th Cir. 2006) ("The Court will not second guess [university official's] legitimate business reason and will not assume the role of a super personnel department."); *Martin v. Dept. of Corrections*, 2005 WL 906515, *8 (S.D.Ind. 2005) (where employee had opportunity to be

11

heard in pre-disciplinary meeting, court will not re-examine employer's credibility determination).[5]

For present purposes, defendant's motion for summary judgment must be denied. The record strongly indicates that there is no genuine issue of material fact that would point to a different result if the facts were viewed in a light favorable to the defendant. In any event, entry of judgment on liability can be deferred. The case will be set for a status hearing, at which time counsel for the parties, having previously conferred with each other on all remaining issues and the possibility of settlement, shall advise the court how this case may most expeditiously reach final judgment.

## ORDER

For the reasons stated above, defendant's motion for summary judgment [#6] is denied. Nalls's motion for a continuance [#23] and his motion to strike the affidavit of Dozier [#25] are both denied. A status hearing is set for May 2, 2007 at 9:30.

Date: March 29, 2007

Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

---

[5] This doctrine arises from Title VII cases, but the principle applies in this context as well. Plaintiff would have to establish that the decision was arbitrary and capricious (a deprivation of substantive due process), which is most unlikely under the facts presented.

12